## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ISAEL SANCHEZ-MERCEDES**,

Plaintiff,

v.

**BUREAU OF PRISONS, *et al.***,

Defendants.

Case No. 1:19-cv-00054 (TNM)

## MEMORANDUM OPINION

Isael Sanchez-Mercedes, a federal prisoner proceeding *pro se*, alleges that he fell and suffered injuries six years ago after a correctional officer confiscated his cane. He also alleges that the Bureau of Prisons ("BOP") has failed to give him adequate medical care for these injuries. He seeks damages of $50 million from the BOP, the Department of Justice ("DOJ"), the officer who confiscated the cane, and a prison warden (collectively, the "Government").

The Court treats the Complaint as raising claims under the Federal Tort Claims Act ("FTCA"), *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983. The Government moves to dismiss all claims. The Court agrees with the Government that this District is the wrong venue for the FTCA claims, that it lacks personal jurisdiction over the *Bivens* defendants, and that any claims under § 1983 plainly fail.

The main issue here is whether to dismiss Sanchez-Mercedes's claims outright or transfer any of them to a proper venue. *See* 28 U.S.C. § 1406(a). The Court concludes that transfer is not in the interest of justice, so it will grant the Government's motion and dismiss the Complaint.

**I.**

For this background, the Court relies on all filings—including declarations—as well as filings in an earlier federal suit that Sanchez-Mercedes brought. The Court looks beyond the Complaint for three reasons. First, the Government moves to dismiss on some grounds that permit the Court to look outside the pleadings. *See infra* Section II. Second, the Government's motion to dismiss encompasses a motion for partial summary judgment. *See* Mot. to Dismiss ("Defs.' Mot.") at 1–2 & n.1,[1] ECF No. 11. Third, the Court must construe a *pro se* Complaint together with all the plaintiff's filings. *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). For its analysis, the Court will look outside the pleadings only when the law allows.

Sanchez-Mercedes has been a federal prisoner since 2007. Second Fornshill Decl. ¶ 3, ECF No. 22-1. For seven years, he was an inmate at the medium-security Federal Correctional Institution, Petersburg ("FCI Petersburg"). *Id.* ¶¶ 3–4. In 2012, he injured his knee. Pl.'s Opp'n at 6, ECF No. 19. While awaiting surgery, he received a cane to help him walk. *Id.* He had permission to use the cane until August 2014. Pl.'s Opp'n Exs. at 5, ECF No. 19-1.

The incident at the heart of this suit occurred at FCI Petersburg on May 6, 2014. Compl. at 2, ECF No. 1. It involved a correctional officer who Sanchez-Mercedes identifies by surname only—Patterson. *Id.* Patterson "intercepted" Sanchez-Mercedes and asked him for his cane and identification. Pl.'s Opp'n Exs. at 3.[2] After comparing the information on the cane with the

---

[1] All page citations are to the page numbers that the CM/ECF system generates.

[2] Sanchez-Mercedes's Complaint contains the basic facts of what happened on May 6. *See* Compl. at 2–3. But the grievance he submitted to prison officials about this incident—which he attached as an exhibit to his opposition brief—contains slightly more detail, so the Court will mainly cite that source in this section. *See* Pl.'s Opp'n Exs. at 3–4.

identification that Sanchez-Mercedes provided, Patterson confiscated the cane. *Id.* Sanchez-Mercedes insisted that he needed his cane to walk up a flight of stairs to his prison cell. *Id.* But Patterson was unmoved. *Id.*

When Sanchez-Mercedes tried climbing the stairs to his cell without the cane, he fell onto his back. *Id.* Blood appeared in his mouth and on his shirt. *Id.* Two officials "came running up the stairs" with his cane. *Id.* They told him to go to his cell and wait there for medicine. *Id.* But no one came. *Id.*

The next day, Sanchez-Mercedes complained to another prison official about what happened. *Id.* The official summoned Patterson and asked why he had taken the cane. *Id.* Patterson responded that the cane "was full of dirt." *Id.*

Sanchez-Mercedes also requested medical attention. *Id.* The medical staff tended to him and gave him pain medicine for his back and shoulder. *Id.* at 3–4.

Three weeks later, Sanchez-Mercedes submitted a "Request for Administrative Remedy." *Id.* at 6. He demanded to know why Patterson had confiscated his cane. *Id.* at 2, 6. Prison officials investigated. *Id.* at 8. Warden Eric D. Wilson soon notified Sanchez-Mercedes of his decision. *Id.* He concluded that Patterson confiscated the cane because Sanchez-Mercedes failed to provide "proper medical documentation" for it. *Id.* Patterson's actions were thus "appropriate." *Id.* Wilson informed Sanchez-Mercedes that he could appeal this decision to the Mid-Atlantic Regional Director for the BOP. *Id.* Sanchez-Mercedes filed a "Regional Administrative Remedy Appeal." *Id.* at 7.

It is somewhat unclear what happened next with Sanchez-Mercedes's grievance. According to the Government, it "was reviewed and responded to by all three levels of review for the Federal Bureau of Prisons (Institution, Regional Office, and Central Office)." First

Fornshill Decl. ¶ 4, ECF No. 11-3.[3]  According to an email exchange that Sanchez-Mercedes provides, the "Central Office"—the final level of review—received the grievance by December 2014.  Pl.'s Opp'n Exs. at 17.  Neither party has provided documentation showing when the Central Office made its decision.

In July 2014, while the grievance process was ongoing, Sanchez-Mercedes received his knee surgery at FCI Petersburg.  Pl.'s Opp'n at 7; Second Fornshill Decl. ¶ 3.  Two weeks later, the BOP transferred him to a different prison—FCI Danbury.  Pl.'s Opp'n at 7; Second Fornshill Decl. ¶ 3.  The reason for the transfer was "a reclassification to a lower security institution." Second Fornshill Decl. ¶ 4.  While at FCI Danbury, Sanchez-Mercedes incurred an "assault disciplinary charge."  *Id.*  So in December 2016, the BOP transferred him to FCI Loretto.  *Id.* ¶¶ 3–4.  Then, in July 2019, the BOP moved him to FCI Loretto's adjacent camp after again reclassifying him to "a lower security level."  *Id.*

Ever since his fall at FCI Petersburg, Sanchez-Mercedes has complained to medical staff at his prisons about the back and shoulder injuries he suffered.  Pl.'s Opp'n at 7–8.  He laments that it took the BOP two years to give him shoulder surgery.  *Id.* at 7.  And he has "consistently" demanded surgery for his back and spine.  *Id.* at 7–8.  As of July 2019, when he filed his opposition brief, he had not received this surgery.  *Id.* at 8.  But in a recent affidavit, he noted that BOP was "scheduling" surgery for a "spinal injury."  Affidavit ¶ 3, ECF No. 23.

This is not his first foray into federal court.  Back in April 2016, Sanchez-Mercedes— represented by counsel—sued in the District of Connecticut.  Compl., *Sanchez-Mercedes v. United States*, No. 3:16-cv-560 (AWT) (D. Conn.), ECF No. 1.  He brought an FTCA claim,

---

[3]  Indeed, this is the standard review process under the applicable regulations.  *See* 28 C.F.R. §§ 542.14–.15.

alleging that Patterson acted negligently when he confiscated the cane. *Id.* ¶¶ 3, 22. He sought $2 million in damages. *Id.* at 6.

The Government moved to dismiss. It pointed out that while the FTCA operates as a limited waiver of sovereign immunity for negligent conduct, it does not apply to certain claims. Mem. in Supp. of Mot. to Dismiss at 5, *Sanchez-Mercedes* (D. Conn.), ECF No. 11-1. For example, it does not apply to a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." *Id.* at 5–6 (quoting 28 U.S.C. § 2680(a)). This is known as the "discretionary function exception." *Id.* The Government argued that Patterson's actions fell within this exception, and so it had immunity from suit. *Id.* at 4. Judge Alvin Thompson agreed and dismissed the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Ruling at 1, 11, *Sanchez-Mercedes* (D. Conn.), ECF No. 14.

Nearly two years later, Sanchez-Mercedes brought this action against the BOP, the DOJ, Patterson, and Warden Wilson. Compl. at 1. His Complaint purports to bring claims under 42 U.S.C. § 1983 for deliberate indifference and violations of the Eighth Amendment. *Id.* at 3. He alleges two wrongs. First, he claims that Patterson unjustifiably confiscated his cane, causing him lasting injuries. *Id.* Second, he complains that the BOP has failed to provide adequate medical care for these injuries. *Id.* at 3–4. This inadequate medical care, he alleges, is an "ongoing situation." Pl.'s Opp'n at 5.

The Government moves to dismiss the Complaint on several grounds. Defs.' Mot. at 1–2. It also seeks partial summary judgment as an alternative reason to dismiss the second half of the Complaint. *Id.* at 1–2, 19–20.[4]

---

[4] The Court warned Sanchez-Mercedes of the implications of a motion to dismiss, but not also of a motion for summary judgment. *See* Order, ECF No. 12. But this omission has not

The Government's motions are ripe for disposition.

## II.

In its motion to dismiss, the Government invokes Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). Defs.' Mot. at 1–2.

To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over his claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). The Court may also "consider materials outside the pleadings" in deciding this motion. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

A motion under Rule 12(b)(2) concerns personal jurisdiction, which refers to a court's power over the *defendants*, rather than power over a plaintiff's claims. The plaintiff has "the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant[s]." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). To do so, he "must allege specific acts connecting [each] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (cleaned up). In ruling on this motion, the Court may again consider materials outside the pleadings. *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). And "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane*, 894 F.2d at 456.

---

prejudiced Sanchez-Mercedes. The motion for partial summary judgment is moot, because the Court will dismiss all his claims under Rule 12(b). *See infra* Section III.

Rule 12(b)(3) authorizes dismissal for improper venue. Similarly, 28 U.S.C. § 1406(a) requires the Court to "dismiss, or if it be in the interest of justice, transfer," a case "filed . . . in the wrong division or district." Together, "[s]ection 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws[.]" *Id.*

"In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011). "The court need not, however, accept the plaintiff's legal conclusions as true, and may consider material outside of the pleadings." *Id.* (citation omitted). The plaintiff has the burden to establish that venue is proper since it is his "obligation to institute the action in a permissible forum." *Id.* "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." *Id.*

To defeat a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court need not credit legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up). Assessing plausibility is ultimately a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

As for the motion for partial summary judgment, the governing standard comes from Rule 56(a). Summary judgment on a claim is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court is mindful that Sanchez-Mercedes is proceeding without counsel. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). More, the Court must consider a *pro se* complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152 (cleaned up).

Applying these liberal standards, the Court construes Sanchez-Mercedes's Complaint as raising claims under the FTCA, *Bivens*, 42 U.S.C. § 1983, or some combination of these. The Government reads it this way too. *See* Defs.' Mot. at 7–9. The Court will address each type of claim in turn.

## III.

### A.

The Government contends that the FTCA claims fail for lack of subject matter jurisdiction and improper venue, or because of a combination of *res judicata* and failure to

exhaust administrative remedies. Defs.' Mot. at 13–20. The Court will not dismiss the FTCA claims wholesale for lack of jurisdiction. But it agrees with the Government's lead argument— that this District is the wrong venue for these claims. *Id.* at 13. The Court also agrees with the Government that it should dismiss the FTCA claims, rather than transfer them elsewhere. *Id.* at 13–14; *see* 28 U.S.C. § 1406(a).

The FTCA waives the Government's sovereign immunity for suits in tort. *Millbrook v. United States*, 569 U.S. 50, 52 (2013). It gives federal courts exclusive jurisdiction over claims against the United States "for . . . personal injury . . . caused by the negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

The only proper defendant for an FTCA claim is the United States. *See id.* §§ 1346(b)(1), 2679(a), (d)(1); *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345–46 (D.C. Cir. 1961). But Sanchez-Mercedes did not sue the "United States." Instead, he sued the BOP, the DOJ, and two prison officials. Compl. at 1; Pl.'s Opp'n at 1. The Government asserts that this "[f]ailure to name the United States as the defendant . . . requires dismissal" of his FTCA claims "for lack of subject-matter jurisdiction." Defs.' Mot. at 18 (quoting *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 125 (D.D.C. 2016)).

The Court is unconvinced. Liberal standards apply to *pro se* pleadings. *Erickson*, 551 U.S. at 94. Sanchez-Mercedes sued two agencies of the United States and two employees of the United States. That is close to suing the United States.

More, *Coulibaly* is distinguishable. The plaintiff there—who was also *pro se*—brought FTCA claims against federal employees *and* the United States. 213 F. Supp. 3d at 124. So Judge Contreras simply dismissed the FTCA claims against the employees and allowed the

FTCA claims against the United States to proceed. *Id.* at 125. He had no occasion to address what should happen if a *pro se* plaintiff brings FTCA claims against federal agencies and employees but *not* the United States.

A case that *Coulibaly* cites is more instructive. In *Johnson v. Veterans Affairs Medical Center*, 133 F. Supp. 3d 10 (D.D.C. 2015), the plaintiff brought FTCA claims but failed to sue the United States. *Id.* at 16–17. Rather than dismiss these claims for lack of jurisdiction, Judge Contreras "sua sponte" granted him "leave to amend his Complaint to substitute the United States as the appropriate defendant under the FTCA." *Id.* at 17. And this plaintiff had counsel. *Id.* at 12.

Here, there is no need to have Sanchez-Mercedes amend his Complaint. The Government has already taken steps to substitute in the United States. A designee of the Attorney General certified under 28 U.S.C. § 2679(d)(1) that Patterson and Wilson "were each an employee of the government and were each acting within the scope of his employment at the time of the alleged incidents." Certification at 1, ECF No. 11-1. Based on this certification, the Government asserts that the FTCA portion of this case "shall be deemed an action against the United States, and the United States shall be substituted as the only defendant." Defs.' Mot. at 7 & n.2 (citing *Mitchell v. Holliday*, 202 F. Supp. 116, 118 (D.D.C. 2016)). Indeed, this assertion is at odds with the Government's simultaneous request for wholesale dismissal of the FTCA claims. *Compare id.*, *with id.* at 18.

Given the liberal standards for *pro se* pleadings, *Johnson*, and the Government's own certification under § 2679(d)(1), the Court will read the Complaint as bringing FTCA claims against the named defendants *and* the United States. It will dismiss the FTCA claims against the named defendants for lack of jurisdiction. *See, e.g.*, *Coulibaly*, 213 F. Supp. 3d at 125. But for

the FTCA claims against the United States, it will turn to the Government's other arguments for dismissal.

The Government contends that this District is the wrong venue for any FTCA claims. Defs.' Mot. at 13. Failing that, it has other arguments for dismissal. For these fallback arguments, it divides the Complaint into two parts. The first part is Sanchez-Mercedes's claim that Patterson wrongfully confiscated the cane. Compl. at 2. The second part is his claim of a continuing violation based on inadequate medical care. *Id.* at 2–3. The Government believes that either claim preclusion or issue preclusion bars the first part. Defs.' Mot. at 14–17. And it contends that Sanchez-Mercedes's failure to exhaust administrative remedies requires summary judgment in its favor for the second part. *Id.* at 19–20.

The Government is correct that this District is the wrong venue for any FTCA claims, so the Court does not resolve its fallback arguments. But they are still relevant. The Court must transfer the FTCA claims to a proper venue—rather than dismiss them—if doing so is "in the interest of justice." 28 U.S.C. § 1406(a). As we will see, the Government's fallback arguments help show why the FTCA claims have many substantive problems. And these problems are one reason why transfer is not "in the interest of justice."

 The FTCA's venue statute is 28 U.S.C. § 1402(b). *Smith v. United States*, 507 U.S. 197, 202 (1993). Under this provision, venue is proper "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." This District does not fall into either category.

Sanchez-Mercedes does not reside here. For venue, "a prisoner has his residence at his place of confinement." *In re Pope*, 580 F.2d 620, 622 (D.C. Cir. 1978) (addressing venue under 28 U.S.C. § 1391(e)); *Patel v. Phillips*, 933 F. Supp. 2d 153, 165 (D.D.C. 2013) (applying *Pope*

for venue under 28 U.S.C. § 1402(b)).  Sanchez-Mercedes is currently an inmate at FCI Loretto, which is in the Western District of Pennsylvania.[5]  So, for § 1402(b), he "resides" in that judicial district.

More, none of the alleged acts or omissions occurred in this District.  Patterson confiscated the cane when Sanchez-Mercedes was an inmate at FCI Petersburg.  Compl. at 2. That prison is in the Eastern District of Virginia.  And he complains of inadequate medical care at each of his prisons—FCI Petersburg, FCI Danbury, and FCI Loretto.  *Id.* at 2–3; Pl.'s Opp'n at 7–8.  FCI Danbury is in the District of Connecticut.  So, he complains of acts or omissions in the Eastern District of Virginia, the District of Connecticut, and the Western District of Pennsylvania.  But none here.

Sanchez-Mercedes does not meaningfully rebut the Government's venue arguments. Indeed, in his most recent filing, he asserts that he was "not knowledgeable to the fact that [his] claim had to be filed in the state where the injury took place."  Affidavit ¶ 5.  This could be a concession that none of the alleged acts or omissions occurred in this District.  At most, he suggests that venue is proper here "due to the location of The Federal Bureau of Prison's General Counsel and Headquarters" and his "constant transfers . . . to different federal prisons."  Pl.'s Opp'n at 1.  But he cannot manufacture venue simply by hinting that high-ranking officials in this District are responsible for his grievances.

Consider *Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993).  An inmate at Terre Haute in Indiana brought a *Bivens* action in this District against his warden, a regional BOP

---

[5] *See* Second Fornshill Decl. ¶¶ 4, 6; Affidavit at 4; Federal Bureau of Prisons, *FCI Loretto*, https://www.bop.gov/locations/institutions/lor/ (last visited Apr. 9, 2020).  It is appropriate to consider materials outside the pleadings when assessing venue.  *Williams*, 792 F. Supp. 2d at 62.

official, and two high-ranking officials—the BOP Director and the Attorney General.  *Id.* at 255. He claimed these officials had violated his Eighth Amendment rights by failing to provide him with a medically prescribed diet.  *Id.* at 254.  While his suit was pending, the BOP transferred him to a medical center in Missouri.  *Id.* at 255.

The D.C. Circuit concluded that venue was improper in the District of Columbia.  *Id.* at 256.  It observed that "all acts and omissions related to his complaint occurred in Indiana or at the prison medical center in Springfield, Missouri."  *Id.*  It was only the inclusion of the BOP Director and the Attorney General as defendants that gave the case "any connection to the District of Columbia at all."  *Id.*  But the court rejected the prisoner's contention that this District was a location "in which a substantial part of the events or omissions giving rise to the claim occurred."  *Id.* at 257 (quoting 28 U.S.C. § 1391(b)(2)).  This argument, the Circuit thought, depended "on a wholly unsubstantiated assumption that policy decisions made in Washington ultimately affected [the prisoner's] treatment at Terre Haute."  *Id.*  He had not alleged "a single rule or policy emanating from Washington that had affected his case."  *Id.*

So too here.  It is "abundantly clear" that the relevant acts and omissions took place at FCI Petersburg, FCI Danbury, and FCI Loretto.  *Id.*  More, Sanchez-Mercedes has alleged no facts suggesting that high-ranking officials at the BOP or the DOJ have been personally involved in decisions about his medical care (or transfers).  Indeed, unlike in *Cameron*, he does not even name high-ranking officials as defendants.  *Cameron* warned that "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  *Id.* at 256.  This is precisely that sort of case.  *See id.* at 256–57.

## B.

## 1.

Having concluded that this District is the wrong venue for any FTCA claims, the Court now considers whether to transfer these claims to a proper venue. *See* 28 U.S.C. § 1406(a). The Court must transfer them if it is "in the interest of justice." *Id.* "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).

The D.C. Circuit has recognized that "it is perhaps impossible to develop any fixed general rules on when cases should be transferred." *Starnes v. McGuire*, 512 F.2d 918, 929 (D.C. Cir. 1974) (addressing 28 U.S.C. § 1404(a), which permits transfer when "in the interest of justice"). Indeed, most cases "will involve factors both for and against transfer," and the Court's task is to "determine the correct action in light of all the factors." *Id.* at 933. Here, the relevant factors favor dismissal, rather than transfer.

To begin, the Court is mindful of the Supreme Court's discussion of § 1406(a) in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962). That decision "inferred a congressional purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles 'impede an expeditious and orderly adjudication . . . on the merits.'" *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C. Cir. 1983) (alteration in original) (quoting *Goldlawr*, 369 U.S. at 466–67). More, *Goldlawr* observed that Congress enacted § 1406(a) to "avoid[] the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess" about proper venue. 369 U.S. at 466.

The Plaintiff's *pro se* status is also relevant here. Other judges in this District "have concluded that the presumption in favor of transfer is especially strong where a plaintiff files a

complaint *pro se*." *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 408 (D.D.C. 2017) (collecting cases). That is a sensible rule-of-thumb. After all, it dovetails with the normal application of liberal standards to *pro se* pleadings. *See Erickson*, 551 U.S. at 94. But as one might expect from the lack of "fixed general rules" governing transfer, *Starnes*, 512 F.2d at 929, transfer is not always appropriate in *pro se* cases. *See, e.g.*, *Buchanan v. Manley*, 145 F.3d 386, 387, 389 n.6 (D.C. Cir. 1998) (affirming decision to dismiss rather than transfer a *pro se* case under § 1406(a)).

And this case involves more than just a *pro se* plaintiff who might have made an "erroneous guess" about venue. It involves claims that almost certainly will not succeed.

In assessing whether to transfer, the Court "can take a peek at the merits, since whether or not the suit has any possible merit bears significantly on whether the court should transfer or dismiss it." *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir. 1999). If a "limited review reveals that the case is a sure loser," the Court "should dismiss the case rather than waste the time of another court." *Id.* at 611. Consistent with the Seventh Circuit's approach, the D.C. Circuit has affirmed dismissal under § 1406(a) when there are "substantive problems" with the plaintiff's claims. *Naartex*, 722 F.2d at 789; *see Buchanan*, 145 F.3d at 389 n.6; *Cameron*, 983 F.2d at 257 n.5.

Here, there are several "substantive problems" with Sanchez-Mercedes's FTCA claims. Consider first his allegation that Patterson wrongfully confiscated the cane. He raised this exact claim when he brought his earlier suit. Judge Thompson concluded that the discretionary function exception required dismissal for lack of jurisdiction, and the doctrine of issue preclusion bars relitigation of that fatal defect. Ruling at 5, 11, *Sanchez-Mercedes* (D. Conn.), ECF No. 14.

More, under the FTCA's statute of limitations, any claim arising from the cane incident is almost certainly untimely.

Start with issue preclusion. This doctrine "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up). It applies under three conditions:

(1) the parties contested the same issue and submitted it for judicial determination in the prior case;

(2) a court of competent jurisdiction actually and necessarily determined the issue; and

(3) preclusion in the second case does not work a basic unfairness to the party bound by the first determination.

*Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015).

Note that issue preclusion is distinct from "claim preclusion." The latter is generally more expansive, since it "forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor*, 553 U.S. at 892 (cleaned up). More, it "bars relitigation not only of matters determined in a previous litigation but also ones that a party could have raised." *NRDC v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988).

But this doctrine applies only when the first case resulted in "a final, valid judgment on the merits." *NRDC v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008). Judge Thompson dismissed Sanchez-Mercedes's earlier suit for lack of jurisdiction, so there was no "judgment on the merits" there. Thus, as the Government ultimately acknowledges, claim preclusion does not apply here. Defs.' Mot. at 17 & n.5.

But issue preclusion would still prevent Sanchez-Mercedes from moving forward with an FTCA claim arising from the cane incident. This is because the doctrine applies not only to

16

issues on the merits but also to "threshold jurisdictional issues." *NAHB v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015). A "jurisdictional dismissal" generally bars "relitigation of the precise issues of jurisdiction adjudicated." *Id.* This rule has a "sharply limited" exception called the "curable defect" exception. *Id.* It "permits litigants whose claims were dismissed on jurisdictional grounds to establish jurisdiction in a subsequent case only if a material change following dismissal cured the original jurisdictional deficiency." *Id.*

*NAHB* shows how jurisdictional issue preclusion works. In a previous suit, the plaintiffs had challenged the EPA's determination that two stretches of river were "navigable waters." *Id.* at 35. The court had dismissed that suit because the plaintiffs lacked standing. *Id.* They "were unable to establish constitutionally cognizable injury traceable to the [EPA's] Determination." *Id.* at 42. Two years later, the same plaintiffs brought the same legal challenge. *Id.* at 35. The Circuit observed that "[i]ssue preclusion bars us from reconsidering whether [the plaintiffs] suffered Article III injury, unless they have alleged that events after the original dismissal cure the jurisdictional inadequacy identified" in the first suit. *Id.* at 42. The plaintiffs had not provided "any new evidence of standing," so issue preclusion barred the second suit. *Id.* at 42–43.

The same reasoning applies here. The suit in the District of Connecticut alleged that Patterson's confiscation of the cane violated the FTCA. Compl. ¶¶ 3, 22, *Sanchez-Mercedes* (D. Conn.), ECF No. 1.[6] The Government moved to dismiss, arguing that Patterson's actions fell

---

[6] It is appropriate to consider the documents from the District of Connecticut case, even though they are outside the pleadings here. For one, the Court is assessing dismissal versus transfer under 28 U.S.C. § 1406(a). That provision is closely related to Rule 12(b)(3), *see Atl. Marine Constr. Co.*, 571 U.S. at 55, and the standards for that rule permit consideration of materials outside the pleadings, *see Williams*, 792 F. Supp. 2d at 62. More, if the Court were considering jurisdictional issue preclusion as an independent reason for dismissal, the standards for either Rule 12(b)(1) or Rule 12(b)(6) would apply. *See Scahill v. District of Columbia*, 909 F.3d 1177,

within the discretionary function exception to the FTCA and therefore it had immunity from suit. Mem. in Supp. of Mot. to Dismiss at 7, *Sanchez-Mercedes* (D. Conn.), ECF No. 11-1. Sanchez-Mercedes—represented by counsel—filed a brief in opposition to the motion. Pl.'s Opp'n, *Sanchez-Mercedes* (D. Conn.), ECF No. 12-1. Judge Thompson concluded that Patterson's actions fell within the discretionary function exception and dismissed the suit for lack of jurisdiction. Ruling at 5, 11, *Sanchez-Mercedes* (D. Conn.), ECF No. 14.

Thus, all three requirements for issue preclusion are present. *Canonsburg Gen. Hosp.*, 807 F.3d at 301. The parties contested the dispositive jurisdictional issue and submitted it for determination. A court of competent jurisdiction decided the issue. And giving that decision preclusive effect here is not unfair to Sanchez-Mercedes, since counsel represented him in the previous suit and filed a brief on the relevant issue.

More, Sanchez-Mercedes does not give any reason why the "curable defect" exception might apply here. Nor is any reason apparent. The discretionary function exception is a different sort of jurisdictional defect than standing. For standing, a court looks to the state of the world at the *outset* of a suit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). So it is easy to see how new developments could cure a defect in standing—a plaintiff might not have sustained injuries by the outset of the first suit, but he might have sustained injuries by the time he files a later suit. *See NAHB*, 786 F.3d at 42.

The "discretionary function" issue, by contrast, looks to what happened *before* a suit begins—here, whether Patterson's actions on May 6, 2014, were discretionary. *See* Ruling at 4–5, *Sanchez-Mercedes* (D. Conn.), ECF No. 14. Judge Thompson's ruling on this issue was either

---

1180 (D.C. Cir. 2018). And those standards permit the Court to consider documents that are subject to judicial notice. *See Hurd*, 864 F.3d at 678, 686; *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1253. The Court does so here.

right or wrong, but it has preclusive effect even if wrong.  *Cutler v. Hayes*, 818 F.2d 879, 888

(D.C. Cir. 1987).  And it is not apparent how anything that has happened since his ruling could

have cured a defect that existed as of May 2014, *before* the first suit even began.  So issue

preclusion bars the portion of Sanchez-Mercedes's Complaint alleging that Patterson's

confiscation of his cane violated the FTCA.  *See NAHB*, 786 F.3d at 42–43.

There is a second problem with this claim—it is likely untimely.  FTCA claims are

subject to two specific limitations periods.  *See* 28 U.S.C. § 2401(b); *United States v. Kwai Fun

Wong*, 575 U.S. 402, 405 (2015).

> A tort claim against the United States shall be forever barred unless it is presented in
> writing to the appropriate Federal agency within two years after such claim accrues or
> unless action is begun within six months after the date of mailing . . . of notice of final
> denial of the claim by the agency[.]

28 U.S.C. § 2401(b).  This provision "requires the claimant both to file the claim with the agency

within two years after accrual of the claim and then to file a complaint in the District Court

within six months after the agency denies the claim."  *Schuler v. United States*, 628 F.2d 199,

201 (D.C. Cir. 1980).  If he does not do *both*, he cannot bring an FTCA claim.  *See id.* at 202.

For the cane incident, Sanchez-Mercedes almost certainly failed to meet the second time

limit.  The incident took place on May 6, 2014.  Three weeks later, he filed a formal "Request for

Administrative Remedy" for this incident.  Pl.'s Opp'n Exs. at 6.[7]  The prison warden gave his

decision on June 19, 2014.  *Id.* at 8.  A few days later, Sanchez-Mercedes appealed that decision

to the BOP's Regional Director.  *Id.* at 7.  The record does not reveal when the Regional Director

rendered a decision.  But Sanchez-Mercedes has provided an email exchange showing that the

---

[7]  The Court finds it appropriate to look outside the pleadings here, since it is assessing this
timeliness problem not as an independent basis for dismissal under Rule 12(b)(6), but as a factor
that weighs against transfer under § 1406(a).  *See supra* note 6.

"Central Office" received his administrative claim by December 29, 2014. *Id.* at 17. The BOP's "Central Office" is the final level of administrative review above the Regional Director. First Fornshill Decl. ¶ 4; *see* 28 C.F.R. § 542.15.

Sanchez-Mercedes failed to meet the second time limit in § 2401(b) if he filed this suit more than six months after the Central Office mailed him its "notice of final denial." 28 U.S.C. § 2401(b). To be sure, the record does not reveal exactly when the Central Office mailed this notice. But just from the facts provided so far, it is virtually certain that this suit came more than six months after that date. Sanchez-Mercedes sued on January 8, 2019. Six months before that date was July 12, 2018. So unless the Central Office mailed him its notice of final decision on or after July 12, 2018, his FTCA claim for the cane incident is untimely.

It defies belief that the Central Office would have made its decision that late; it had received his grievance by December 29, 2014, more than *three and a half years* prior. Indeed, such a late response would have violated the BOP's own regulations, which require the Central Office to make its decision at most within 60 days of receiving an appeal. *See* 28 C.F.R. § 542.18. And his grievance had been moving quickly through the system up to that point, as the regulations dictate. *See id.* He filed it in May 2014, and the Central Office—the final level of review—received it just seven months later. It strains credulity to think that the Central Office then took *six times* that many months to make its decision.

The very existence of the District of Connecticut suit—and court documents filed in that suit—corroborate this conclusion. That suit brought an FTCA claim based on the cane incident. Sanchez-Mercedes was represented by counsel. His counsel would have known that he could sue only if the BOP had provided a "final[] denial" of his grievance. 28 U.S.C. § 2675(a). So this would mean a final decision came no later than April 7, 2016, the day before he sued. *See*

Compl., *Sanchez-Mercedes* (D. Conn.), ECF No. 1. The instant suit—filed in January 2019—came well more than six months after April 2016.

More, the Government agreed that Sanchez-Mercedes had "timely filed" the Connecticut suit. Mem. in Supp. of Mot. to Dismiss at 3, *Sanchez-Mercedes* (D. Conn.), ECF No. 11-1. This concession strongly suggests that the BOP had indeed rendered a final administrative decision by April 2016. The Government also referenced a separate "Administrative Tort Claim" that Sanchez-Mercedes filed, which received a final decision in October 2015. *Id.*; *see id.* Exs. at 2, 12, ECF No. 11-2. Indeed, that decision informed Sanchez-Mercedes that he could "file suit . . . not later than six (6) months after the date of mailing of this notification." *Id.* Exs. at 12, ECF No. 11-2. This language, of course, tracks the second time limit in § 2401(b), suggesting that the date of *this* document—October 2015—is the relevant date for the six-month clock.

In short, all signs point one way. Any FTCA claim arising from the cane incident was untimely when Sanchez-Mercedes filed this suit in January 2019.[8] The Court is loath to burden another federal court with an FTCA claim that is almost certainly untimely, let alone one that faces a fatal preclusion problem.

## 2.

Consider next the second half of Sanchez-Mercedes's Complaint—the part that alleges a continuing violation based on inadequate medical care. Compl. at 2–3; Pl.'s Opp'n at 7–8. The

---

[8] This point—that the statute of limitations had almost certainly run when he filed *this* suit—is key. The D.C. Circuit has instructed that transfer under § 1406(a) is "particularly appropriate" when, without transfer, "the cause of action would be barred by the running of the applicable statute of limitations." *Sinclair*, 711 F.2d at 294. In other words, if a plaintiff timely sues in the wrong venue, but then the limitations period expires while the suit is pending, this favors transfer. Here, though, it is nearly certain that the limitations period did not expire *while* this suit was pending but expired *before* this suit even began. So the statute-of-limitations factor that *Sinclair* identifies does not support transfer here.

Government urges the Court to dismiss—rather than transfer—any FTCA claims stemming from this portion based on failure to exhaust administrative remedies. Defs.' Mot. at 13–14. It asserts that he "has not filed any medical-related administrative remedies since 2014, i.e., after the alleged May 6, 2014, incident." *Id.* at 20.[9] Declarations from both the Government and Sanchez-Mercedes support this assertion. *See* First Fornshill Decl. ¶¶ 2–5; Second Fornshill Decl. ¶ 7; Pl.'s Opp'n at 7. The Government is correct that his failure to seek administrative remedies for inadequate medical care is a problem for his FTCA claims. But some preliminary clarifications are in order.

First, the Government offers its exhaustion argument as a reason for dismissal rather than transfer under § 1406(a) *and* in the context of a motion for partial summary judgment. Defs.' Mot. at 13–14, 19–20. The motion for partial summary judgment is secondary. The Government offers this motion as an alternative, in case the Court disagrees with its arguments on jurisdiction and venue for the FTCA claims. *See id.* at 1–2 & n.1. Because the Court will dismiss the FTCA claims for improper venue, the motion for partial summary judgment is moot. But the exhaustion issue is still relevant as a "substantive problem" that cuts against transfer of any FTCA claims related to inadequate medical care.[10]

---

[9] As noted, the documents from the District of Connecticut case contain a copy of an "Administrative Tort Claim" different from the one that appears in the record here. *See* Def.'s Mot. Exs. at 2, 12, *Sanchez-Mercedes* (D. Conn.), ECF No. 11-2. But that claim also just focused on confiscation of the cane. *Id.* It did not allege inadequate medical care for his injuries. *Id.*

[10] Of course, we know this exhaustion problem exists only because of the parties' declarations. Is it appropriate to consider these declarations when assessing transfer under § 1406(a), even though the Court is not reaching the motion for partial summary judgment? The Court finds that it is, for at least three reasons.

For one, as already noted, § 1406(a) is closely related to Rule 12(b)(3), and the standards for that rule permit consideration of materials outside the pleadings. *See supra* note 6. More, deciding

A second point of clarification: the Government contends that Sanchez-Mercedes failed to meet the exhaustion requirement in the Prison Litigation Reform Act ("PLRA"). *Id.* at 19–20. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But the FTCA has its own specific exhaustion requirement. It provides that "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). This is known as the FTCA's "presentment" requirement. *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).

The Court will therefore focus on whether Sanchez-Mercedes's FTCA claims meet this presentment requirement.[11] This leads to a final point of clarification. Under the current law of the Circuit, this requirement is "jurisdictional." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C.

_____

whether transfer is "in the interest of justice" rests within the Court's "sound discretion." *Naartex*, 722 F.2d at 789. It follows that the Court should have discretion to consider these materials. Indeed, none of the D.C. Circuit's cases citing "substantive problems" as a relevant factor under § 1406(a) suggest that the Court must limit itself to the pleadings. *See Buchanan*, 145 F.3d at 389 n.6; *Cameron*, 983 F.2d at 257 n.5; *Naartex*, 722 F.2d at 789. Finally, as we will see, the relevant exhaustion requirement, 28 U.S.C. § 2675(a), is jurisdictional. So if the Court were evaluating this jurisdictional requirement on a motion to dismiss, it would be able to look outside the pleadings. *Jerome Stevens Pharm., Inc.*, 402 F.3d at 1253 (discussing standards for motions under Rule 12(b)(1)).

[11] The weight of authority suggests that a court should consider *only* exhaustion requirements under the FTCA—and not the PLRA—for a prisoner's FTCA claims. *See, e.g.*, *Bakhtiari v. Spaulding*, 779 F. App'x 129, 132 (3d Cir. 2019); *Lambert v. United States*, 198 F. App'x 835, 838, 840 (11th Cir. 2006); *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 513–14 & n.4 (1st Cir. 2006); *Lineberry v. Fed. Bureau of Prisons*, 932 F. Supp. 2d 284, 290–91 (D.D.C. 2013). In any event, it would not help Sanchez-Mercedes if the PLRA also applied to his FTCA claims. Because he has not even initiated any relevant administrative claims, he has not satisfied the exhaustion requirements under either statute.

Cir. 1997); *see also Manning v. Esper*, No. 12-cv-1802 (CKK), 2019 WL 281278, at *9 (D.D.C. Jan. 22, 2019) (citing *Smith v. Clinton*, 886 F.3d 122, 127 (D.C. Cir. 2018)); *Barber v. United States*, 642 F. App'x 411, 415 n.3 (5th Cir. 2016) ("We find that *Wong*'s holding regarding the FTCA's time limits has no bearing on our analysis of the jurisdictional limitation provided by 28 U.S.C. § 2675(a)'s presentment requirement."). That raises a question of sequencing. Is it appropriate to consider a jurisdictional issue in the context of assessing dismissal versus transfer under § 1406(a), rather than resolve the issue before considering venue? The Court finds that it is. *See Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425, 431–32 (2007) (holding that a district court can dismiss a case under the doctrine of *forum non conveniens* before resolving subject matter jurisdiction); *accord Gatlin v. Piscitelli*, No. 18-cv-2716 (RDM), 2020 WL 515882, at *1 & n.1 (D.D.C. Jan. 31, 2020).

So the Court now takes a "peek" at whether Sanchez-Mercedes has satisfied the FTCA's presentment requirement for claims arising from the second half of his Complaint. He has not.

The second half of his Complaint encompasses claims of inadequate medical care ever since the cane incident. But he did not "first present[]" these claims "to the appropriate Federal agency." 28 U.S.C. § 2675(a). The only claim he has presented to the BOP since 2014 was for the cane incident itself. *See* First Fornshill Decl. ¶¶ 2–5; Second Fornshill Decl. ¶ 7; Pl.'s Opp'n at 7; Pl.'s Opp'n Exs. at 2–4, 6; *supra* note 9.[12] So a transferee court would lack jurisdiction over any FTCA claims in the second half of the Complaint. *See Simpkins*, 108 F.3d at 370–71.

---

[12] So he most likely did satisfy the presentment requirement for the cane incident, which encompasses the first half of the Complaint. But as already discussed, any FTCA claim in the first half of the Complaint faces problems of issue preclusion and untimeliness under 28 U.S.C. § 2401(b).

Sanchez-Mercedes protests, however, that the BOP has interfered with his ability to exhaust administrative remedies because it keeps transferring him from prison to prison. *See* Pl.'s Opp'n at 1–2, 7–8. It is true that the BOP has transferred him three times since 2014. Second Fornshill Decl. ¶ 3. He went from FCI Petersburg to FCI Danbury in August 2014. Then he moved from FCI Danbury to FCI Loretto in December 2016. And finally, the BOP sent him to FCI Loretto's adjacent camp in July 2019.

Sanchez-Mercedes might have a point—at least at this early stage—if he had at least *initiated* a medical-related administrative claim. Then it might be plausible that transfers had frustrated his ability to attain a final agency decision under 28 U.S.C. § 2675(a).[13] But he did not even initiate an administrative appeal. And in each prison, he had plenty of time to do so. He did not leave FCI Petersburg until three months after the cane incident, and his stays at FCI Danbury and FCI Loretto were for more than two years each. *See* Second Fornshill Decl. ¶ 3. More still, he knew *how* to initiate the process, having done so for the cane incident.

None of the cases that Sanchez-Mercedes cites is to the contrary. Pl.'s Opp'n at 2; *see DeBrew v. Atwood*, 792 F.3d 118 (D.C. Cir. 2015); *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004); *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004). For one, these cases all dealt with exhaustion under the PLRA, not the FTCA. The PLRA contains a "textual exception to mandatory exhaustion"—inmates "need not exhaust *unavailable* [remedies]." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (emphasis added). One category of "unavailability" is "when prison

---

[13] Even then, though, Sanchez-Mercedes could have a problem rebutting the Government's assertion that legitimate reasons motivated his transfers. *See* Defs.' Reply at 3–4, ECF No. 22. According to the BOP's records, two transfers were because of reclassifications to a different security level and one occurred after he incurred an assault disciplinary charge. Second Fornshill Decl. ¶ 4.

administrators thwart inmates from taking advantage of a grievance process through machination." *Id.* at 1860.

The FTCA's presentment, requirement, by contrast, does not contain this exception. *See* 28 U.S.C. § 2675(a). More, it is a "jurisdictional" requirement, *Simpkins*, 108 F.3d at 371, and courts have "no authority to create equitable exceptions to jurisdictional requirements," *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Indeed, the leading Supreme Court case on the presentment requirement held flatly that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Because the plaintiff—an inmate who had proceeded *pro se*—"failed to heed [§ 2675(a)'s] clear statutory command," the district court had "properly dismissed his suit." *Id.*

*DeBrew*, *Hemphill*, and *Ziemba* also are inapposite because they did not address the situation we have here: an inmate who claims that prison transfers have thwarted exhaustion, even though he has not even *initiated* any relevant administrative claims. The plaintiffs in *DeBrew* and *Ziemba* alleged that transfers were partly to blame for failure to exhaust, but they had initiated administrative claims. *See DeBrew*, 792 F.3d at 126; *Ziemba*, 366 F.3d at 162. And the plaintiffs in *Hemphill* did not even allege that transfers were partly to blame. *See* 380 F.3d at 686–90.

Nor does *Reid v. Hurwitz*, 920 F.3d 828 (D.C. Cir. 2019), help Sanchez-Mercedes's cause. The *pro se* plaintiff there was an inmate who challenged alleged "deprivations" that he experienced while in Special Housing Units ("SHUs"). *Id.* at 830. He also raised "a broad challenge to a nationwide BOP policy" of "violating its own regulations." *Id.* at 830, 834. He sought injunctive relief. *Id.* at 830.

Before and after Reid filed his Complaint, the BOP transferred him in and out of SHUs several times and moved him around to different prisons. *Id.* at 830–31, 834. The Government highlighted this, arguing that Reid's claims were moot because he was no longer in the specific SHUs that gave rise to his claims. *Id.* at 831–32. The district court agreed and dismissed the complaint, citing the rule that an inmate's transfer from a prison generally moots any claim for equitable relief arising from his confinement in that prison. *Id.* at 832.

The D.C. Circuit reversed. It concluded that Reid's allegations "logically" fell within the mootness exception for claims "capable of repetition, yet evading review." *Id.* at 830. The Circuit agreed with the district court that a prisoner's transfer generally moots claims for injunctive relief arising from conditions in his previous facility. *Id.* at 834. But it explained that this rule does not apply "when a prisoner alleges he has been subject to those conditions in multiple BOP facilities, *along with* an alleged policy or practice of violating regulations that would apply to Reid at any BOP facility in the future." *Id.* (emphasis added).

In sum, while the several transfers Reid experienced were relevant to the court's reasoning, they were not the whole story. Central to its holding was Reid's allegation that the BOP had a nationwide *policy* of violating its own regulations. *Id.* at 830, 834. It never suggested that the BOP had sinister motives for transferring Reid so often. Indeed, it affirmed the rule that transfers generally moot prisoners' claims for injunctive relief.

At most, then, *Reid*'s teaching here is that the Court should think hard about what effect Sanchez-Mercedes's transfers might have had on his ability to meet the FTCA's exhaustion requirement. But that just leads the Court back to where it started: Sanchez-Mercedes might have a valid point if he had at least initiated a relevant administrative claim. If so, and the BOP

transferred him soon thereafter, it could be a sign that it wanted to moot his grievance.[14]  Yet he

did not initiate, so there was nothing to moot.  *Reid* does not undermine this logic.  More, as

noted, Sanchez-Mercedes was at FCI Danbury and FCI Loretto for more than two years each,

which gave him plenty of time to initiate an administrative process.  Second Fornshill Decl. ¶ 3.

By contrast, Reid was "transferred in and out of a SHU over twenty times from August 1, 2007,

to July 19, 2016."  920 F.3d at 830.

In short, the second half of Sanchez-Mercedes's Complaint faces a significant hurdle

under 28 U.S.C. § 2675(a).[15]  Meanwhile, the first half of his Complaint faces preclusion and

timeliness barriers.  These "substantive problems" are one reason why it is not "in the interest of

justice" to saddle another federal court with this case.  *Naartex*, 722 F.2d at 789.

### 3.

Another reason counseling against transfer is that Sanchez-Mercedes—with the benefit of

counsel—previously filed a similar case in the District of Connecticut.  He had a fair shot.  Of

course, the Court is mindful that claim preclusion does not apply here, since Judge Thompson

---

[14]  That said, an FTCA claim is for damages, not injunctive relief, *see* 28 U.S.C. § 1346(b)(1), so presumably a transfer would not moot this backward-looking relief.  Indeed, that is another difference with *Reid*: the inmate there sought injunctive (forward-looking) relief.  920 F.3d at 830.

[15]  This is so even though Sanchez-Mercedes—after briefing was complete—submitted an Affidavit stating that he had "filed medical-related administrative remedies from 2014 through 2019 which are on file."  Affidavit ¶ 7.  This eleventh-hour assertion is too slender a reed to save his claims from dismissal under § 1406(a).  Remember, the Court is taking a "peek" at his claims, not fully resolving them.  *See Phillips*, 173 F.3d at 610–11.  And the peek here reveals that Sanchez-Mercedes would still face significant problems trying to invoke jurisdiction under the FTCA.  For one, his late-breaking statement flatly contradicts his earlier declaration that he had initiated *no* administrative remedies related to inadequate medical care.  *See* Pl.'s Opp'n at 7.  More, it contradicts the Government's two declarations on the matter.  *See* First Fornshill Decl. ¶¶ 2–5; Second Fornshill Decl. ¶ 7.  More still, it is far from clear that Sanchez-Mercedes is referring to filing administrative *tort* claims, *see* 28 C.F.R. § 543.30 *et seq.*, rather than filing administrative claims involving conditions of confinement, *see* 28 C.F.R. § 542.10 *et seq.*  Only the former triggers exhaustion under the FTCA.  *See Lambert*, 198 F. App'x at 840.

dismissed his previous suit for lack of jurisdiction. *See supra*. But the existence of a previous suit is relevant to whether transferring a near-duplicate case (and a doomed one at that) is "in the interest of justice." *Accord Thompson v. Cushwa*, No. 17-cv-2603 (RDM), 2020 WL 1140688, at *5 (D.D.C. Mar. 9, 2020). It is appropriate to consider the right balance between fairness to the plaintiff and judicial economy. *Cf. Starnes*, 512 F.2d at 932 ("Although congestion alone is not sufficient reason for transfer, relative docket congestion . . . is an appropriate factor to be considered."). And here, that balance strikes in favor of dismissal, given Sanchez-Mercedes's previous opportunity and the substantive problems with his current attempt.

On a final note, transfer could even complicate matters for Sanchez-Mercedes. As discussed, proper venue under the FTCA is either where the plaintiff "resides" or where "the act or omission complained of occurred." 28 U.S.C. § 1402(b). Both options would cause difficulties. Under D.C. Circuit precedent, Sanchez-Mercedes resides at his place of confinement, *In re Pope*, 580 F.2d at 622, which is currently in the Western District of Pennsylvania. But it is possible that under Third Circuit law, his residence for venue purposes would be his "place of domicile before [his] incarceration." *Keys v. DOJ*, 288 F. App'x 863, 866 (3d Cir. 2008). And that place of domicile may or may not be the Western District of Pennsylvania. So if this Court were to transfer the case to the Western District of Pennsylvania, that may not be where he "resides" once the case is in that venue. *Accord Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 130–31 (D.D.C. 2010).

Of course, that would be the proper venue for any acts or omissions at FCI Loretto. But that creates another problem, because it would not be where the acts or omissions at FCI Petersburg or FCI Danbury occurred. To be sure, there is precedent for severing claims and sending them to different forums. *See, e.g.*, *Pinson v. DOJ*, 74 F. Supp. 3d 283, 288 (D.D.C.

2014). Normally, though, that is a disfavored option. *See Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 38 (D.D.C. 2009) ("[T]ransferring all of the claims to the same forum assures that they will be heard together, preventing the unnecessary expenditure of judicial and party resources that would otherwise occur if the claims were heard in multiple judicial districts.").

Here, though, the Court is between a rock and a hard place. Sending all the claims to the same forum would not be entirely fair, since it may not be the correct venue for all his claims. So the fairest *transfer* option would be splitting the case three ways, but that option greatly increases "expenditure of judicial and party resources," including for Sanchez-Mercedes. *Id.* Ultimately, then, dismissing the case—and letting Sanchez-Mercedes decide what venue or venues he wants to pursue, if any—strikes the best balance. *Accord Jones v. Kane*, No. 18-cv-612 (RDM), 2020 WL 977970, at *3 (D.D.C. Feb. 28, 2020).

In sum, three reasons strongly favor dismissal here: the substantive problems with Sanchez-Mercedes's FTCA claims, the existence of a previous, similar suit in which he had the benefit of counsel, and questions about where and how transfer should occur. These factors overcome any general preference for transfer, *see Sinclair*, 711 F.2d at 293–94, and any presumption of transfer for *pro se* plaintiffs, *see Fam*, 236 F. Supp. 3d at 408. Transfer here is not "in the interest of justice." Thus, insofar as Sanchez-Mercedes raises FTCA claims against the United States, the Court will dismiss them for improper venue and will not transfer any. *See* 28 U.S.C. §§ 1402(b), 1406(a).

## C.

Next up are any *Bivens* claims that Sanchez-Mercedes asserts. These claims seek damages against federal officials—in their individual capacities—for alleged constitutional

violations.  *See Carlson v. Green*, 446 U.S. 14, 16, 21 (1980).[16]  But "*Bivens* claims are not

available against federal agencies."  *Abdelfattah v. DHS*, 787 F.3d 524, 534 (D.C. Cir. 2015).  So

the only relevant defendants here are the individual defendants: Patterson—the officer who

allegedly confiscated Sanchez-Mercedes's cane—and Wilson, the warden of FCI Petersburg.

The Government argues—and the Court agrees—that the Court lacks personal

jurisdiction over Patterson and Wilson in their individual capacities.  Defs.' Mot. at 21–22.[17]

Sanchez-Mercedes has the burden of establishing a basis for personal jurisdiction.  *Crane*, 894

F.2d at 456.  In assessing whether it has personal jurisdiction over a non-resident, the Court

"must first examine whether jurisdiction is applicable under the state's long-arm statute."  *GTE*

*New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  If yes, then

the Court must determine "whether a finding of jurisdiction satisfies the constitutional

requirements of due process."  *Id.*  Here, the first step is dispositive.

The Complaint does not allege that Wilson or Patterson is a resident of the District of

Columbia.  So the Court turns to D.C.'s long-arm statute.  D.C. Code § 13-423.  Since Sanchez-

Mercedes's claims against Patterson and Wilson pertain to acts or omissions at FCI Petersburg—

"outside the District of Columbia"—the relevant provision is § 13-423(a)(4).  *Forras v. Rauf*,

812 F.3d 1102, 1107 (D.C. Cir. 2016).  By its plain language, this provision has two

requirements: (1) a "tortious injury in the District of Columbia"; and (2) that the defendant

---

[16]  A plaintiff can simultaneously maintain *Bivens* claims alongside FTCA claims, at least at the
outset of litigation.  *See Carlson*, 446 U.S. at 20 (noting that "Congress views [the] FTCA and
*Bivens* as parallel, complementary causes of action").

[17]  Insofar as the Complaint seeks damages under *Bivens* against Patterson and Wilson in their
official capacities (or against the DOJ and the BOP), sovereign immunity applies, and the Court
lacks subject matter jurisdiction over these claims.  *See Clark v. Library of Congress*, 750 F.2d
89, 102–05 (D.C. Cir. 1984).

"regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4); *see Forras*, 812 F.3d at 1107–08.

Sanchez-Mercedes has shown neither. He has not alleged that he experienced a tortious injury *in* the District of Columbia. And nothing in this Complaint "even hints" that Patterson or Wilson has engaged in a persistent course of conduct in the District, has done business here, or has derived revenue from this locale. *Forras*, 812 F.3d at 1108. Thus, the District's long-arm statute does not reach Patterson or Wilson, so this Court lacks personal jurisdiction over them in their individual capacities. *See id.* at 1106.

The Court will dismiss the *Bivens* claims, rather than transfer them under 28 U.S.C. § 1406(a). Even though that statute speaks only to transfer when "venue" is wrong, there is some authority suggesting that the Court should also consider whether to transfer claims when it lacks personal jurisdiction, even if venue is somehow proper. *See Sinclair*, 711 F.2d at 294 (citing *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967)).[18]

Transfer of any *Bivens* claims against Patterson and Wilson is not "in the interest of justice." If the Court were to transfer these claims to the Eastern District of Virginia (where FCI Petersburg is located), that court would find them untimely, since it would apply Virginia's two-year limitations period for personal injury actions, Va. Code Ann. § 8.01-243(A). *See Reinbold*

---

[18] The Government does not make the argument, but this District is the wrong venue for the *Bivens* claims too. The relevant venue statute for *Bivens* claims is 28 U.S.C. § 1391(b). *Cameron*, 983 F.2d at 257. Under that provision, venue is proper in this District if Patterson and Wilson reside here, 28 U.S.C. § 1391(b)(1), if "a substantial part of the events or omissions giving rise to the claim occurred" here, *id.* § 1391(b)(2), or if Patterson or Wilson "is subject to the court's personal jurisdiction" here, *id.* § 1391(b)(3). But for reasons the Court has already given, none of these is true.

*v. Evers*, 187 F.3d 348, 353, 356, 359 n.10 (4th Cir. 1999) (applying West Virginia's personal injury limitations period for *Bivens* claims arising from that state); *Epps v. Laybourne*, No. 3:17-cv-646 (HEH), 2019 WL 470904, at *4 n.4 (E.D. Va. Feb. 6, 2019) (applying Virginia's personal injury limitations period for *Bivens* claims of a prisoner at FCI Petersburg).

Two years had long since passed when Sanchez-Mercedes sued here in January 2019. Since Patterson was a correctional officer at FCI Petersburg and Wilson was the warden, any claims against them accrued during Sanchez-Mercedes's stay there. The cane incident at the heart of this suit occurred on May 6, 2014, Compl. at 2, and Sanchez-Mercedes was no longer an inmate at that prison as of August 2014, *see* Second Fornshill Decl. ¶ 3. In short, the limitations period for any *Bivens* claims against these defendants expired no later than August 2016. *See* Va. Code Ann. § 8.01-243(A); *DePaola v. Clarke*, 884 F.3d 481, 486–88 (4th Cir. 2018).[19]

To be clear, the two-year period expired before Sanchez-Mercedes filed *this* suit. So the statute-of-limitations factor that *Sinclair* identified, *see supra* note 8, does not support transfer here. In other words, this is not a case in which the plaintiff timely sued, and then the limitations period expired while the suit was pending. *See Sinclair*, 711 F.2d at 294.

The second factor supporting dismissal is the same one the Court discussed for the FTCA claims: his previous, similar suit in the District of Connecticut, in which he had the benefit of counsel. This consideration is particularly weighty here, since his *Bivens* claims arise from the events at FCI Petersburg, and those events were the focus of the previous suit.

---

[19] Sanchez-Mercedes notes in his Complaint and opposition brief that he was an inmate at FCI Danbury—and thus no longer an inmate at FCI Petersburg—as of June 2015. Compl. at 3; Pl.'s Opp'n at 7. So even if the Court just went by these documents, the limitations period for his *Bivens* claims expired no later than June 2017, which was still before he sued in January 2019.

These two considerations—the clear timeliness problem and the previous suit—outweigh any general preference for transfer, *see id.* at 293–94, and any presumption of transfer for *pro se* plaintiffs, *see Fam*, 236 F. Supp. 3d at 408. Transfer of these claims is thus not "in the interest of justice." 28 U.S.C. § 1406(a). The Court will dismiss any *Bivens* claims in the Complaint.

**D.**

Finally, the Court agrees with the Government that any claims under 42 U.S.C. § 1983 plainly fail. This statute authorizes suits against officials—in their individual capacities— challenging action they take under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). As federal agencies, the DOJ and the BOP enjoy sovereign immunity from suit under § 1983. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005). The Court will therefore dismiss any § 1983 claims against these agencies for lack of subject matter jurisdiction. *See id.*

Any § 1983 claims against Patterson and Wilson in their individual capacities also fail.[20] This statute "does not apply to federal officials acting under color of federal law." *Id.* at 1104. The plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48. "Acting under color of state law" means the defendant was "clothed with the authority of state law." *Id.* at 49. The Complaint in no way suggests that Patterson—a federal official—was "clothed with the authority of state law" when he confiscated Sanchez-Mercedes's cane in a federal prison. It also in no way suggests this for any alleged

---

[20] Insofar as the Complaint seeks damages under § 1983 against Patterson and Wilson in their official capacities, sovereign immunity applies, and the Court lacks subject matter jurisdiction over these claims. *See Clark*, 750 F.2d at 102–05.

actions that Wilson—also a federal official—took.  The Court will thus dismiss any § 1983

claims against Patterson and Wilson for failure to state a claim.

Even if the Court must consider whether to transfer—rather than dismiss—the § 1983

claims under 28 U.S.C. § 1406(a), *see Sinclair*, 711 F.2d at 294, it chooses to dismiss them.

Given the obvious defects with these claims, transfer is not "in the interest of justice."

## IV.

For all these reasons, the Court will grant the Government's motion to dismiss and will

dismiss the Complaint in its entirety.[21]  It will not transfer any claims under 28 U.S.C. § 1406(a).

And it will deny the Government's motion for partial summary judgment as moot.[22]

---

[21]  In his opposition brief, Sanchez-Mercedes makes several requests that do not appear in his
Complaint: (1) "injunctive relief for [spine] surgery"; (2) "injunctive relief . . . to keep [him]
stationary in a federal facility"; (3) "assistance in obtaining [his] medical records"; and (4) "a
Stay of Proceedings."  Pl.'s Opp'n at 2–3.  The Court will not grant these requests.  Sanchez-
Mercedes supplies no legal basis for them, and none is apparent.  More, his Complaint seeks
damages, *see* Compl. at 4, but these requests go well beyond claims for damages.  "[I]t is
axiomatic that a complaint may not be amended by the briefs in opposition to a motion to
dismiss."  *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quoting
*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see, e.g.*, *Manna v.
DOJ*, 106 F. Supp. 3d 16, 17, 19–20 (D.D.C. 2015) (applying this rule to a *pro se* plaintiff).
Entertaining these requests would be particularly inapt here, since the Court has concluded that
this District is the wrong venue for the claims that *do* fairly appear in the Complaint.  Indeed, a
venue problem would exist for his miscellaneous requests too, since he wants this Court to enjoin
prison officials in other states.  *See* 28 U.S.C. § 1391(b); *Cameron*, 983 F.2d at 256–57.

Sanchez-Mercedes also seeks appointment of counsel.  Pl.'s Opp'n at 3.  This is now his fourth
such request.  *See* ECF Nos. 9, 15, 20.  The Court previously gave its reasons for denying these
requests.  Order at 1–2, ECF No. 14; *see* LCvR 83.11(b)(3).  And since the Court is dismissing
the Complaint, the Court will deny this latest request as moot in any event.

[22]  Sanchez-Mercedes styled his opposition brief as a "Response to Defendant's Motion for
Partial Summary Judgment *and Cross-Motion for Relief*."  Pl.'s Opp'n at 1 (emphasis added).
Insofar as Sanchez-Mercedes has cross-moved for summary judgment, the Court will deny this
motion as moot too.  More, the Government suggests in its Proposed Order that dismissal here
should count as a "strike" for Sanchez-Mercedes under 28 U.S.C. § 1915(g) and that the Court
should certify under 28 U.S.C. § 1915(a)(3) that any appeal he takes from a dismissal would not
be in good faith.  *See* Defs.' Proposed Order at 1, ECF No. 11-4.  But the Court will not include

A separate Order will issue.

_____

Dated: April 10, 2020                                    TREVOR N. McFADDEN, U.S.D.J.

---

these statements in its Order.  A dismissal counts as a strike under § 1915(g) only if the Court dismisses the *entire action* because it "is frivolous, malicious, or fails to state a claim upon which relief may be granted."  *See Thompson v. DEA*, 492 F.3d 428, 430, 432 (D.C. Cir. 2007).  The Court is not dismissing the entire action for failure to state a claim.  And it does not find that the entire action is frivolous or malicious.  Finally, because the action is not entirely frivolous, the Court declines to certify that an appeal would be in bad faith.  *See* 28 U.S.C. § 1915(a)(3); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006).